967 So.2d 444 (2007)
Valentin RODAS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-26.
District Court of Appeal of Florida, Fourth District.
November 7, 2007.
*445 Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
We write to address one issuewhether fundamental error occurred when the trial judge allowed a bailiff to orally transmit the court's instruction on the law from the court to the deliberating jury. We conclude that the error was not fundamental. Because the defendant did not timely object in the trial court, before the error occurred, he did not preserve the error for appeal.
Valentin Rodas was charged with interfering with the custody of a parent or guardian, in violation of section 787.03(1), Florida Statutes (2005). The evidence at trial was that Rodas took a 13 year old girl with him to New York, against her mother's wishes. Rodas testified that the mother approved of his relationship with the girl and gave him permission to be her boyfriend, without disclosing the girl's age.
During deliberations, the jury asked two questions. The first question was "What is the meaning of recklessly took?" The trial judge reconvened court outside the presence of the jury and conferred with the state and defense to determine an appropriate answer to the question. After the jury returned to the courtroom, the judge answered the question. There was no objection. A juror had another question and the judge told him to "put it in writing." The jury then left the courtroom. The bailiff told the judge that the jury was "not sure if there will be another question."
The record then indicates that there was a "short recess, after which, proceedings resume[d]." At this point, the record becomes murky. Apparently there was a *446 second written question: "Does definition of `took' require physical force?" The written question was later marked as court Exhibit 3. The transcript then reads:
The Court: Didn't I tell you (Indiscernible)
Bailiff: They've got the instructions.
[Prosecutor]: I would ask to tell him that
The Court: Tell them just to read the instructions. They have the instructions. Read them and consider them and (Indiscernible) sanity.
Bailiff: I told them to read the instruction as a whole and (Indiscernible)
[Prosecutor]: That's perfect.
The Court: Okay. Counsel, one second. Okay. (Indiscernible).
Clyde. No. Clyde, Clyde, come here[.] Come here. Just give them that and tell them it's the answer. All right. We'll be in recess.
What appears to have happened is that at the direction of the judge, the bailiff responded to the question by telling the jury something about reading "the instructions as a whole." The record does not indicate how much time transpired between the judge's direction to the bailiff ("Tell them just to read the instructions.") and the bailiff's report back to the court. The prosecutor thought the bailiff handled the matter perfectly; the defense was silent.[1] It appears that the judge had second thoughts, so he handwrote a response to the question: "Read the instructions with a view to harmonizing all its parts." Then he told the bailiff to give the written instruction to the jury. Within a few minutes, the jury returned a verdict.
Rodas argues that fundamental error occurred in the answer to the jury's second question. He relies primarily on Florida Rule of Criminal Procedure 3.410, section 918.07, Florida Statutes (2006), and State v. Merricks, 831 So.2d 156 (Fla.2002), a case where the supreme court applied the statute and rule. Merricks indicated that a bailiff's ex parte communication with the jury on a substantive matter, even "at the direction of the trial court," constitutes "per se reversible error." 831 So.2d at 160.
There is a difference between "per se reversible error" and "fundamental error." The general rule is that a reversal in a criminal case must be based on a prejudicial error that was preserved by a timely objection in the trial court. See § 924.051, Fla. Stat. (2006). A fundamental error is an exception to the contemporaneous objection rule. See § 924.051(3), Fla. Stat. (2006); Reed v. State, 837 So.2d 366, 370 (Fla.2002). A fundamental error reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." State v. Weaver, 957 So.2d 586, 588 (Fla.2007) *447 (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
A per se reversible error means that a reviewing court does not undertake harmless error analysis to decide if a prejudicial error occurred. A per se reversible error is not necessarily a fundamental one. The type of per se reversible error at issue in Merricks and in this case "is prophylactic in nature and must be invoked by contemporaneous objection at trial." 831 So.2d at 159 (quoting Thomas v. State, 730 So.2d 667, 668 (Fla.1998)). If such an error must be preserved by an objection at trial it is not a fundamental error.
Here, the defendant did not object to the trial court's handling of the second question. Unlike the defendant in Merricks, who objected and moved for a mistrial as soon as he learned of the bailiff's ex parte communication with a juror, the defense was silent during the bailiff's interaction with the judge concerning the second question. A defendant cannot watch a trial judge drift into this type of error and then profit by his silence on appeal. We leave for another day the effect of an unpreserved Merricks error on postconviction relief. See Carratelli v. State, 961 So.2d 312 (Fla.2007); Buggs v. State, 840 So.2d 1099 (Fla. 5th DCA 2003).
Affirmed.
KLEIN, J., and EMAS, KEVIN, Associate Judge, concur.
NOTES
[1] Rodas's initial brief states that at this point "there was no indication that Appellant or Appellant's attorney were present in the courtroom." We cannot draw that conclusion from the record. According to the clerk's notes, the jury retired to deliberate at 2:37 p.m. The jury's first question occurred at 2:58 p.m. Nine transcript pages are devoted to answering the question; the prosecutor and the defense attorney called their respective offices in the quest for a Black's Law Dictionary. The defense approved of the court's oral instruction to the jury. As the jury was retiring to the jury room, it is clear that another question might have been forthcoming. The clerk's notes state that the second question occurred at 3:19 p.m. The jury returned a verdict at 3:27 p.m. and the record indicates that Rodas and his counsel were present. Under these circumstances, we cannot conclude that the defense disappeared from the courtroom between 3:19 p.m. and 3:27 p.m., when the court handled the second question. The defense has made no attempt to recreate this part of the record under Florida Rule of Appellate Procedure 9.200(4).